117-2371 Jimenez vs. DOJ. This is it. Appendix 582, paragraph T1. It says, reporting situations which reflect on the integrity of an employee or on DEA. Well, I'm in 582. What section? Towards the top of the page, Your Honor. Section T, paragraph T and then the one below that. Well, starting with T, reporting situations which reflect on the integrity of an employee or on DEA. Right. What were the illegal activities he was engaged in? Well, it's certainly improper. Were they illegal? Is there any allegation they were illegal? Well, I suppose I'm not sure what illegal means, if that just means it's a violation or if it means it's an actual violation of a criminal statute. Any improper activities? Right. So, if I could direct the court to appendix 2065. This is quoting, this is a document that's quoting one of the rules. It's in the middle paragraph there. It's quoting from the DEA personnel manual, section 2735.15. Sorry, what page? 2065, Your Honor. Section 2735.15, J13. It's quoting from that. In the middle there, it says, no employee shall, one, intentionally destroy, mutilate, remove, falsify, conceal, alter, or make an unauthorized copy of any government record for his or her own purposes. And what he did was, if I could direct the court to appendix 441. Wait a minute. You think anybody who makes a photograph of any government record, a copy of a government record for their own purpose, any at all, must be reported through an OPR referral? Is that right? That's what you think? It's a photocopy of any government record. There's no level of severity, and you think it's a must, not a may report. So you think any photocopy of any government record, regardless of significance, requires a reporting to OPR? If it's unauthorized and if it's for his or her own purpose, according to the rules, yes. You police the photocopy machine? I mean, it just seems like a ridiculous standard. Let's go back, though, for a second to 582. Page 582, what you were talking about, says that these infractions must be reported to the proper DEA authorities. What in this section defines that as an OPR referral as opposed to just someone else within the chain at DEA? This says you've got to report it to DEA authorities. It doesn't say you have to refer it to OPR. You told me that this section required them to refer it to OPR. So what portion of this document requires an OPR referral as opposed to just referring it to DEA authorities? Right, right below that it says anyone who has information in violation of these standards of conduct will immediately report it to their immediate supervisor. Right, or directly to the Office of Professional Responsibility. So they had the option of referring it. They didn't have to refer it to OPR, correct? Well, they felt that they did, Your Honor, and that's what they testified. But they didn't. You stood up and said, yes, I asked you, did they feel like they did, or did they actually have to report it? And you said they actually had to report it. And so we just walked through it, and now I think we've come to the conclusion, both of us, that they did not actually have to do an OPR referral. I don't agree with that, Your Honor. You don't agree. So you don't think an or means you have two different options? Well, Mr. McGinty under this could have reported it to Mr. Coleman, or he could have reported it to OPR. Mr. Coleman could have reported it. I don't know if he had another supervisor. He could have reported it to his supervisor if he had one, or he could have reported it to OPR. So it goes up the chain of command, and eventually it gets to OPR. If everybody in the chain of command thinks that it is actually something that meets these standards, that it's a... If somebody looks in the chain of command, looks at it, and says, no, that's not a violation, then maybe they wouldn't have to report it to OPR. But if everybody looks at it and says, I think it's a violation, it goes up the chain of command, and it goes to OPR. It sounds like you may have misspoken or perhaps overstated your argument. Am I correct? Your position is that it has to be reported, not necessarily directly to OPR in the first instance. Right. It has to be reported. It goes to the supervisor or to OPR. But when the supervisor gets it, then the supervisor makes the same decision. Either report it up to my supervisor... But in this case, the supervisor could have made the determination that, well, this is a minor thing. It was inadvertently disclosed and then it was pulled back. I think the only discretion they have is to say, it's clearly not a violation. Let's look at T2. Right. What does T2 say? Right. It can handle it if it's not a serious matter. Not if it's not a violation. If it's not a serious matter. This seems to me like the quintessential definition of not a serious matter. I don't think what Mr. Jimenez did, while it may technically be a violation, sounds particularly bad. The problem he has for me is that he's got to overcome a substantial evidence point of standard. And even if I think these agents did not have to refer it, and even if I think maybe they knew they didn't have to refer it, I still don't know how I get to a reversal under a substantial evidence standard. Well, because there is substantial evidence, the court would be obligated to affirm it, Your Honor, under the standard of review. But it seems pretty clear to me as we've walked through this personnel manual that they did not have to report it, and that a supervisor absolutely could have made a determination this is not a serious matter because that's at least the determination I would have made under the circumstances, knowing all the facts. So then it leaves me to question what their motives were under the circumstances. Well, certainly all of these supervisors had been advocating for Mr. McGinty had been editing his memo to try to help him get promoted. Direct the court to Appendix 207. This is an email, Mr. McGinty talking to Mr. Jimenez by email. I made many, many corrections in grammar, word choice, syntax, consistency, and sentence structure in the case write-up and accompanying position review worksheet. Your written work product needs to be perfect. He goes on to say that your written work is pretty much your only contact with me and the special agent in charge, SAC, on this matter, so it needs to reflect you in the best light possible. He's working hard, working on the weekends, editing his memo to try and get him promoted, but then secretly he's retaliating against him. It doesn't make sense. What is that essay that you're talking about that he was editing? It's the promotion memo. So he didn't have to do that. It's not like he was editing work product that was part of, in the supervisory chain, something he would have edited. Well, I think it goes through the supervisory chain. Did he have an obligation to edit it? I don't think he had an obligation to edit it, Your Honor. I'm sorry, could you say that again, Your Honor? I said that these are friendly questions, not hostile questions. You're looking for the hidden something, and they're not. They're friendly questions. So he didn't have any obligation to do this, to edit this guy's memo, so he was helping him seek promotion. Right. Yes, that's right, Your Honor. Right. So that would seem to be substantial evidence upon which the AJ could have found... Right, and the judge relied on this. So that's Mr. McGinty. As for Mr. Coleman, when the promotion was delayed the first time because of the three-year rule, Mr. Coleman is calling Mr. Whaley, who is the inspector at OPR, to advocate for the promotion. This is at Appendix 2411 and 2412. At 2411, this is Mr. Coleman testifying. He said he doesn't remember every word of the conversation, but he said he called Chuck, meaning Mr. Whaley, at OPR and said, hey, Chuck, got this guy. He's earned his 13. He came back disapproved, checking to see the status, essentially, of what the details are on this thing. And then at page 2412... It doesn't sound like someone who's trying to thwart. At 2412, he said, so did I vehemently argue and jump up and down with Chuck? No. But I certainly said, hey, this kid is a good agent and he's done a good job. And Chuck said, I realize that, but the three-year is the three-year rule for these lost guns, essentially. That's the disciplinary proceeding for the lost gun. That's not the disclosure of the underdog copy of the stuff. Trying to keep these two things separate in my head. Right. So we've got Mr. Coleman, who previously was not only moving it through the chain of command, but advocating and maybe to a small degree complaining to Mr. Whaley when the three-year rule delayed it the first time. And that's all the substantial evidence to support the AJ's conclusion that these two supervisors didn't have it out for Mr. Jimenez. That's not why they sent this OPR referral. They sent it because they thought they had to. Now, maybe they technically didn't have to, but even you thought they had to. So it couldn't be unreasonable for them to think they had to. I couldn't have said it better myself, Your Honor. I'll give you two minutes of rebuttal time. Just very quickly, the actual edits are in the record. They're at appendix 1403 on. They're hardly substantive. The other issue is I want you to look at the date. They're in April. The intervening event is he files a complaint a month later, arguing with Sarah. All of this stuff about how they supported him occurred before he filed this appeal. Our position is I think you've locked on it, which is... Did they support him after he filed the appeal? No, there was actually a change in the regulations where he was supposed to automatically get a promotion afterwards. But didn't they inquire why he didn't? I mean, he didn't because of the three-year lost gun thing, but didn't they actually say, why didn't he get this? I don't believe that occurred after he filed his appeal. I think that occurred before, and they were told that he could reapply in November, and he needed to reapply. In the intervening time, this case was litigated. What about the fact that you were wrong when you represented to this court that the OPR referral immediately blocked her promotion? Because the way I looked at the regulations is the OPR... Is it correct? The government certainly looks to me like page 172 expressly says only an active investigation. No, because he was already entitled... If that was the case, he was already entitled to his promotion. I mean, if the OPR referral wouldn't have blocked him, he was already entitled to his promotion before OPR actively looked into this. Did you argue that? Maybe that would have been a good argument to make. If the rule really is that only an OPR investigation, not a referral, will block the promotion, did you argue that in this case they shouldn't have held up a promotion that he was automatically entitled to? It's hard because the judge truncated the hearing and dealt with the OPR issues somewhat separately. Only the referral did he handle at the time. So we argued that this case should be taken as a whole, and in all candor, I'm not certain that came up in that particular context. I just want to finish with returning to, I think, the central issue is let us look at what the judge said was his rationale for finding substantial evidence. And that was that there was no inconsistencies in testimony. Well, there was. That there was no opportunity for them to use discretion. Well, there was. That there was no underlying motivation. And I just want to finish with please look at the actual referral because you've touched on it, Your Honor. In order for them to bolster that this needed to be referred to OPR, they took what was a de minimis disclosure and they trumpeted it into a violation for personal gain and a violation of national security. And they did that knowing that they were witnesses in this case. I think given that and given that there were other attacks on him for filing the USERRA appeal, there was sufficient evidence for this ALJ to find a hostile work environment. And there was substantial evidence to suggest or there was evidence to suggest that his findings on their face were incorrect. None of the ones being advanced today were the ones he advanced in his opinion. Thank you.